FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 N. Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorney for Creditors JASKARAN SIHOTA,
KEWAL SINGH, AND JASWINDER KAUR

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>BHAJAN SINGH and<br>BALVINDER KAUR<br><br>Debtor. | Case No. 20-10569-A-12<br><br>Chapter 12 |
| JASKARAN SIHOTA, KEWAL SINGH, and JASWINDER KAUR,<br><br>Plaintiffs,<br>vs.<br><br>BHAJAN SINGH and BALVINDER KAUR,<br><br>Defendants. | Adv. Proc. No. ____________<br><br>**COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBT (11 U.S.C. § 523)** |

COMES NOW, the above-named Plaintiffs, JASKARAN SIHOTA, an individual; KEWAL SINGH, an individual; and JASWINDER KAUR, an individual (collectively referred to as “Plaintiffs” or “Toronto Group”) and hereby alleges as follow:

1. This is an action for determination of the dischargeability of certain debt, filed pursuant to § 523 of the Bankruptcy Code.

## PARTIES

2. At all times relevant to this complaint, Plaintiff Jaswinder Kaur ("Jaswinder') was a resident of Fresno County, State of California.

3. At all times relevant to this complaint, Plaintiffs Jaskaran Sihota ("Jaskaran") and Kewal Singh Sihota ("Kewal") were citizens of the Province of Ontario, Canada.

4. At all times relevant to this complaint Defendant Bhajan Singh, a/k/a Bhajan Singh Sihota ("Bhajan"), is an individual is and was a resident of Fresno County, State of California.

5. At all times relevant to this complaint Defendant Balvinder Kaur ("Balvinder") is and was a resident of Fresno County, State of California.

## JURISDICTION and VENUE

6. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 12 case under Title 11 and concerns dischargeability of debt of the Debtors in that case.

7. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, and is referred to the Bankruptcy Court pursuant to Section 157(b)(2) of Title 28 thereof, and General Order Nos. 182 and 223 of the United States District Court for the Easter District of California.

8. Plaintiffs consent to the entry of judgment and final orders by the Bankruptcy Court.

9. Venue is appropriate in this court pursuant to 28 U.S.C. § 1409(a).

**FACTS COMMON TO ALL COUNTS**

10. In 2000, Plaintiff Jaskaran, Defendant Bhajan, and a third party, Nirmal Sihota ("Nirmal"), contributed equal amounts to purchase two (2) properties referred as Kamm and Thompson, each with a one-third share in each of the two properties.

11. Plaintiff Jaskaran, Defendant Bhajan, and Nirmal entered into a partnership agreement regarding the Kamm and Thompson properties.

12. The partnership agreement was drafted by Nirmal's real estate agent and signed without independent legal advice.

13. The Kamm and Thompson properties were divided into three plots.

14. Nirmal was afforded the right to manage the properties.

15. In 2008, SSS International Inc. was formed.

16. There were 15 shares of SSS International, Inc. each of which was purchased for $100,000 apiece.

17. The ownership of the 15 shares was as follows:

| **Owners** | **No. of Shares** | **Owner** | **No. of Shares** |
|---|---|---|---|
| Nirmal Sihota | Two (2) | Arvinder Sihota | One (1) |
| Narinder Sihota | One (1) | Bhajan Singh, defendant | Seven (7) |
| Jaskaran Sihota, plaintiff | Two (2) | Kewal Singh, plaintiff | One (1) |
| Jaswinder Kaur, plaintiff | One (1) | | |

18. All shareholders contributed funds to purchase property referred to as Ducor Ranch.

19. On January 2, 2009, all shareholders of SSS International, Inc. contributed funds proportionate to their shares and purchased property referred to as Mountainview Ranch, with title held in Nirmal's name.

20. From 2008 through 2010, Nirmal was provided verbal authorization to act on behalf of all other shareholders for day-to-day management, and management of farming operations, of SSS International properties, along with the Kamm and Thompson properties.

21. In 2009, SSS International, Inc. was converted to SSS International, LLC in 2009, share ownership allocation noted above became voting interests in the LLC.

22. The members of SSS, LLC are the Plaintiffs and Defendant Bhajan Singh Sihota, along with Nirmal Sihota, Narinder Sihota, and Arvinder Sihota.

23. From mid-2010 to 2012, both Bhajan and Nirmal were jointly in charge of managing the SSS, LLC properties along with Kamm and Thompson, again pursuant to verbal authorizations provided by other shareholders.

24. Between 2008 to 2012 the Toronto Group received neither income nor accounting for the properties managed by Nirmal and Bhajan for all shareholders.

25. Bhajan represented to the Toronto Group that the properties owned by the LLC were incurring losses during this period. However, the Toronto Group has since learned this was untrue, and that SSS LLC properties made a net profit of $1,628,000 between 2008 and 2012.

26. In 2011 SSS, LLC sold 120 acres of the Ducor Ranch for approximately $1,680,000.

27. Bhajan informed the Toronto Group that the LLC did not have enough money to cover the capital gains tax owed on this sale, and that no additional loans were available to

SSS, LLC to pay these taxes, and that the Toronto Group members of the LLC needed to loan the LLC money in order to pay the capital gains tax owed on the sale.

28. Using the loans made to the LLC by the Toronto Group and other members, Bhajan withdrew approximately $70,000 from the LLC to pay his, and only his, portion of the capital gains tax associated with the 2011 sale of a portion of the Ducor Ranch.

29. The loans made by the Toronto Group to the LLC to pay the capital gains taxes have not been repaid by the LLC or Bhajan, and Bhajan denied the Toronto Group from withdrawing funds from the LLC as reimbursement to themselves for the "loan" Bhajan induced them to make.

30. On November 11, 2012, it was decided that the LLC would dissolve and to divide property owned by the partnership of Plaintiff Jaskaran, Defendant Bhajan, and Nirmal. the members of SSS, LLC entered into an agreement that outlined the division of amongst the members for the Ducor Ranch, Mountainview, and Kamm properties.

31. A dispute arose between Nirmal and Defendant Bhajan in the process of the property division and dissolution of SSS, LLC. This dispute dragged on for approximately a year until December 12, 2013, the members of SSS, LLC entered into an additional agreement regarding the terms for sharing farming equipment and clarifying debts of the members.

32. On or around December, 2012, the Toronto Group and Defendant Bhajan entered into a verbal agreement, wherein Bhajan was to form a corporation on behalf of the Toronto Group and himself, the Plaintiffs and Defendant Bhajan being the only shareholders therein. Because he was local, Bhajan was to manage both his land and the Toronto Group's land, as well as Plaintiff Jaskaran's portion of the Kamm and Thompson properties. The newly formed corporation was to run farming operations on all the properties.

33. The agreement included a requirement that Defendant Bhajan was to provide accounting every three months to the Toronto Group.

34. Defendant Bhajan represented to Plaintiffs that "Bhajan Singh Farms" was the corporation formed pursuant to the verbal agreement, and contended that he had outlined every partner's respective shares. In fact, Bhajan Singh Farms is a sole proprietorship.

35. The Toronto Group never received an accounting pursuant to the agreement with Defendant Bhajan.

36. In 2013, Defendant Bhajan paid Plaintiff Jaskaran a one-time payment of approximately $20,000. Defendant Bhajan claimed this amount was all of the past profits received from the farming and management of Jaskaran's portion of the Kamm and Thompson properties.

37. The Toronto Group has subsequently learned that $20,000 is in fact less than half of the profit that would be earned on Jaskaran's share of the Kamm and Thompson properties *in one year*. Plaintiff Jaskaran's portion of the Kamm and Thompson properties have earned a profit every year since 2012, but Defendant Bhajan has never accounted therefore, nor apart from the sum listed paid Plaintiff Jaskaran therefore.

38. Furthermore, residential houses on the Kamm and Thompson properties have been continuously rented since 2012, yet Defendant Bhajan has never paid Plaintiff Jaskaran the rental income therefrom.

39. In February 2014, Bhajan represented to the Toronto Group that distributors required their 2012 verbal agreement to be reduced to writing. He further prepared a document which he prepared and presented to the Toronto group for execution. Under this agreement, Bhajan would manage the farming operations on all Toronto Group properties. He further

represented to the Toronto Group that one year after beginning to farm their properties he would pay off the mortgage on all of the Toronto group's properties.

40. By August 2014, Bhajan only paid off a portion of the mortgage on the Toronto Group's properties, and represented to the Toronto Group that by December 2014 all debts on the properties would be paid off and that furthermore, profits would be earned.

41. On January 23, 2015, Bhajan filed a complaint in Tulare Superior Court on behalf of himself and the Toronto Group against Nirmal. However, this filing was without the authority or knowledge of the Toronto Group. On the same day, Nirmal filed a complaint in Fresno County Superior Court against the Toronto Group and Bhajan.

42. In January 2015, the Toronto Group requested the 2014 accounts from Bhajan numerous times. These requests took place in a series of telephone calls, during which Bhajan represented to the Toronto Group that 2014 had been a "really good" year and promised a detailed accounting by March, 2015.

43. On March 6, 2015, all former members of SSS, LLC attended a mediation in Fresno with Judge O'Hara to finalize the dissolution and division of the partnership pursuant to the 2012 agreement, the 2013 agreement, and the claims filed in the lawsuits by and between Bhajan (on his own behalf and supposedly on behalf of the Toronto Group) and Nirmal.

44. At the mediation with Judge O'Hara, the Toronto Group requested to separate their property from Bhajan. The same attorney represented Bhajan and the Toronto Group at that mediation, and persuaded the Toronto Group to separate theirs and Bhajan's property at a later time. Consequently, only Nirmal, Arvinder, and Narinder's properties were separated from Bhajan and the Toronto Group's properties in this mediation.

45. Also in March, 2015, Bhajan represented to the Toronto Group that he had paid off all debts on the properties he managed in 2014, though he did not provide any accounting or documentation to this effect.

46. Notwithstanding these representations, by January 2016 Bhajan had not paid the mortgage on the Toronto Group's properties. Bhajan represented to the Toronto Group that the Bank which held the mortgage (Farm Credit West) refused to accept payment because Bhajan and Nirmal needed to make the mortgage payment at the same time. Bhajan further represented to the Toronto Group that his attorney and Nirmal's attorney held the mortgage payments in their trust account on behalf of the Toronto Group.

47. Yet the 2015 and 2016 mortgage payments were not made. Furthermore, the Toronto Group were subsequently informed by Bhajan's counsel and Nirmal's counsel that they never held any funds on their behalf for these payments, as Bhajan had represented to them that these attorneys had.

48. In both 2015 and 2016, Bhajan chose not to water the Toronto Group's portion of the Ducor Ranch. This resulted in total crop failure and hundreds of thousands of dollars in lost profits in 2015 and 2016. Further, failure to water the crops in 2015 and 2016 led to a significant decrease in the property value, and in expected future earnings due to costs associated with plant regrowth.

49. In or around 2016 Bhajan filed insurance claims for crop failures on the SSS LLC Properties for 2015 and 2016 without the knowledge of the Toronto Group. These claims were paid, yet no portion of these paid claims was tendered to the Toronto Group.

50. On September 23, 2016, Bhajan's daughter, Jyoti Kaur Sihota ("Jyoti") formed individual LLCs for Kewal and Jaskaran without the knowledge or consent of Kewal, Jaskaran individually, or the Toronto Group generally.

51. In November 2016, Bhajan and Jyoti informed the Toronto Group that Jaskaran and Kewal needed to immediately proceed to the United States' Consulate office in Toronto, Canada, to sign paperwork for a refinanced loan application in order for the division of the property. He represented that this was pursuant to the 2012 agreement. What he did not inform them was that this loan included paying off a personal loan to Bhajan for $1,032,000, and the refinance of his (Bhajan's) residence for $230,000. No loan documents were provided to Toronto Group—they were expected to attend the Consulate and sign the documents blindly.

52. The first week of January 2017, Bhajan informed the Toronto Group he had taken out $3,400,000 in loans for the partnership from Farm Credit West, and he demanded money from the Toronto Group for these loans. Prior to this time, Toronto Group had no knowledge of the existence of said loans.

53. In late January 2017, the Toronto Group traveled from Canada to the Dinuba office of Farm Credit West to inquire about the nature of the $3.4 million in loans Bhajan took out without their knowledge or consent. They were informed that Farm Credit West could not provide information to them because they were personal loans to Bhajan. They were further informed the required refinancing to complete division of the SSS, LLC property would not be permitted until Bhajan's personal loans with Farm Credit West were repaid.

54. Based on their belief that their property, monies (funds rightfully owed and belonging to the Toronto Group), had been transferred to or used by Bhajan to purchase property held by Bhajan for himself and his wife Balvinder Kaur; his daughter Jyoti and her

husband Ajitpal Singh, and Bhupinder Sihota, the Toronto Group filed suit in Fresno County Superior Court on April 20, 2018.

55. The Plaintiff's suit alleged **breach of contract** for Bhajan's failure to form a corporation, failure to provide an accounting, failure to turn over profits, failure to make mortgage payments, and failure to make property tax payments, all of which resulted in damages to Plaintiffs.

56. The Plaintiff's suit also alleged Bhajan had committed **fraud**. This was predicated on his failure to provide an accounting from 2010 to 2012 of their shareholder and subsequently membership interests in SSS, LLC; his representations that their interests had incurred losses to mask both the profits owing to Plaintiffs and Bhajan's theft of those profits; fraudulently informing the Plaintiffs a corporation was formed in which they had interests when it was, in fact, merely a sole proprietorship designed to conceal the true state of the Plaintiffs' investments, all of which resulted in damages to Plaintiffs.

57. Plaintiffs' suit further alleged Bhajan **misrepresented** to them that losses occurred between 2010 and 2012, thereby concealing profit made and stolen by Bhajan; and misrepresenting that Bhajan Singh Farms, a sole proprietorship controlled by Bhajan, was the corporation he had agreed to form and manage on behalf of Plaintiffs.

58. Plaintiffs' suit also alleged that Bhajan **breached his fiduciary duties** by his recurring and persistent misrepresentations regarding the status of the farming operations; failing and refusing to provide an accounting; failing and refusing to pay the mortgage on properties owned by Plaintiffs pursuant to their agreement; failing and refusing to pay taxes on properties owned by the Plaintiffs pursuant to their agreement; and failing and refusing to

distribute operational profits pursuant to their agreement, all of which resulted in harm to the Plaintiffs.

59. Plaintiffs' suit included a claim for **conversion** owing to failing to water plaintiff's portion of the managed properties; receiving and not accounting for profits earned by the farming operations; interfering with their ability to use their lands by placing them under his exclusive control rather than in a corporation as promised.

60. Plaintiffs' further prayed for an **accounting.**

61. Finally, Plaintiffs' alleged **breach of good faith and fair dealing** by failing to provide an accounting as promised, misrepresenting the lack of profits, failing to abide by the agreement to form a corporation thereby preventing Plaintiffs from knowing the true state of affairs or securing their rights as shareholders; failing to make mortgage payments; failing to pay taxes; and failing to provide Plaintiffs with their share of the profits.

62. The matter was referred to arbitration. On January 25, 2020, following a four-day arbitration, the Hon. Howard Broadman (Ret.) made the following findings:

a. That Bhajan owed fiduciary duties to the Toronto Group, which duties he breached, and that the Toronto Group has been damaged as a result of those breaches.

b. That Bhajan and Balvinder Kaur committed fraud, malice, and oppression, in withholding accounting and information from the Toronto Group.

c. That as a result of the foregoing actions of the Defendants, the Toronto Group was entitled to $616,236.60 in profit from 2013 – 2016 for the Ducor and Mountainview Properties.

d. That as a result of the foregoing actions of the Defendants, that Plaintiff Jaskaran was entitled $98,564.01 in profit from 2012 – 2016 from the Kamm Property.

e. That Bhajan is liable for all mortgage payments through 2016.

f. That Bhajan is liable for all late fees and interest associated with late mortgage payments through the end of July 2016.

g. That the Toronto Group's mortgage payments for 2017, 2018, and 2019, totaling $140,105.64 are to remain attributed to Bhajan's outstanding loan to Farm Credit West as an offset to the judgment against the Defendants.

h. That Bhajan and Balvinder personally remain liable for $3,400,000 in loans from Farm Cred West, along with all late fees and interest due for failing to make timely payments, and that none of these loans are the responsibility of the Toronto Group

i. That Bhajan's annual salary of $100,000 for 2012-2016 is to be disgorged proportionate to the amount paid to Bhajan from the Toronto Group—to wit, the amount of $145,545.54 must be disgorged to the Toronto Group.

j. That attorneys fees paid by the Toronto Group related to the litigation with Nirmal be partially repaid to the Toronto Group, in the amount of $30,000.

k. Defendants Bhajan and Balvinder are liable for punitive damages for their fraudulent actions to the Plaintiff in the amount of $100,000.

l. Attorneys fees were awarded to the Toronto Group in the amount of $300,000, and costs in the amount of $202,643.88.

63. Following the entry of this arbitration award, the Defendant filed a petition for bankruptcy protection.

**FIRST CLAIM FOR RELIEF**
**Defendants' Debts are Non-Dischargeable Because They Were Obtained by False Pretenses, False Representations or Actual Fraud**
**(11 U.S.C. § 523(a)(2)(A))**

64. The allegations of paragraphs 1 through 65 are realleged and incorporated herein.

65. Defendants Bhajan and Balvinder obtained money and use of real property from the Toronto Group between 2010 and 2017.

66. The means by which Defendants obtained money and property from the Toronto Group was by means of serial misrepresentations, fraud, and deceptive conduct set forth hereinabove, and summarized hereinbelow as follows ('the Representations'):

a. Between 2010 and 2012 that the farming operations he managed on behalf of the Toronto Group only incurred losses;

b. In 2012 that monies loaned by the Toronto Group were liable for Bhajan and Balvinder's capital gains taxes (and not using monies loaned by Toronto Group to pay off their capital gains taxes);

c. Also in 2012 that a corporation would be formed in which they were all shareholders;

d. In 2013 that the $20,000 payment to Jaskaran represented all of the profit from the farming operations, when it did not even represent one-half of one-year's worth (nor did it include any portion of the rental proceeds to which Jaskaran was entitled);

e. In 2014 that if Bhajan managed all of their farming operations he would pay off the mortgage within one year.

f. Later in 2015 that the mortgage and taxes had been paid on Toronto Group's properties but these payments were refused because of Nirmal's conduct, and so the monies were being held in trust by attorneys.

g. In deliberately permitting the destruction of crops on the Toronto Group's property, submitting for crop insurance thereon, and failing to remit proceeds received therefrom.

h. In 2016 that a refinance on their properties was necessary to effectuate a division of the properties, but in fact was to pay for personal loans for the Defendants

i. In numerous claims that accounting would be provided to continue to induce the Toronto Group to give Defendants money and property.

67. The Representations were false when made to the Toronto Group by Defendants.

68. Defendants knew that the Representations were false when they were made to Plaintiffs.

69. Defendants made the Representations to Plaintiffs with the intent of deceiving them into use property and payment of monies.

70. Owing to the familial relationship between the Plaintiffs and Defendants Bhajan and Balvinder, the Plaintiff's justifiably relied on the Representations.

71. Plaintiffs sustained serious and severe financial losses as a result of the Representations

WHEREFORE, Plaintiff respectfully prays for relief as hereinafter set forth.

**SECOND CLAIM FOR RELIEF**
**Defendant BHAJAN's Debts are Non- Dischargeable Because They Were Obtained by Fraud While Acting in a Fiduciary Capacity**
**(11 U.S.C. § 523(a)(4)**

72. The allegations of paragraphs 1 through 72 are realleged and incorporated herein.

73. Defendant Bhajan was at all times relevant hereto acting in a fiduciary capacity to the Plaintiffs in that they were business partners, fellow members of an LLC which he was supposed to manage.

74. Defendant Bhajan was further a fiduciary because he was the business manager and business partner and represented to Plaintiffs he had formed a corporation in which they were all shareholders and that he was managing the operations of the corporation for their mutual benefit.

75. Defendant Bhajan was further reposed with trust because of his familial ties to the Plaintiffs—he was a senior family member to them.

76. Each and every of the fraudulent acts alleged hereinabove occurred while Defendant Bhajan was acting in a fiduciary capacity.

**THIRD CLAIM FOR RELIEF**
**Defendant BHAJAN's Debts are Non- Dischargeable Because BHAJAN Committed Willful and Malicious Injury to Plaintiffs and Their Property**
**(11 U.S.C. § 523(a)(6)**

77. The allegations of paragraphs 1 through 77 are realleged and incorporated herein.

78. At all times relevant hereto, and in making each and every of the representations cited hereinabove, Defendant Bhajan acted willfully against the Toronto Group, in that he had

the subjective motive or intent to harm the Toronto Group for his own benefit in making the Representations, and he believed that injury to the Toronto Group was substantially certain to occur as a result of making the Representations.

79. Defendant Bhajan acted maliciously against the Plaintiffs in making the Representations, inducing their reliance and securing their money and property without any just cause or excuse and which necessarily resulted in injury to the Plaintiffs.

80. Judge Broadman, in rendering his arbitration award, specifically found that that Defendant Bhajan had acted with malice towards the Plaintiffs and, consistent with this finding he imposed punitive damages against Defendants.

81. In addition to the Representations, Defendant Bhajan's willful and malicious injury to the Plaintiffs' property is shown by his deliberately not watering Plaintiff's fields, and thereafter claiming the insurance monies therefore without remittance to Plaintiffs.

WHEREFORE, the Plaintiffs having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

a. That judgment be entered for Plaintiffs against Defendants at an amount to be determined at trial;

b. That the claim of Plaintiffs against Defendants is nondischargeable under 11 U.S.C. § 523(a)(2)(A);

c. That the claim of the Plaintiffs against Defendants is nondischargable under 11 U.S.C. § 523(a)(4);

d. That the claim of the Plaintiffs against Defendants is nondischargable under 11 U.S.C. § 523(a)(6);and

e. For such other and further relief as this Honorable Court shall deem just and proper.

Dated: 6/26/2020

FEAR WADDELL, P.C.

By: /s/ Peter A. Sauer

Peter A. Sauer, Attorney for Plaintiff